**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| LIANNE LIEBOWITZ, | Case No. 3:26-cv-00547 |
| Plaintiff, | **COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| COLLIERS INTERNATIONAL USA, LLC and KRISTIN LEWIS, | |
| Defendants. | |

Plaintiff Lianne Liebowitz ("Plaintiff" or "Liebowitz"), by and through her undersigned counsel, hereby alleges as follows against Defendants Colliers International USA, LLC ("Colliers" or the "Company") and Kristin Lewis ("Lewis") (together, "Defendants"):

**NATURE OF THE CLAIMS**

1. After more than four years of exemplary performance, Liebowitz took FMLA leave in September 2025 to address serious mental and physical health conditions.

2. Halfway through her leave, Liebowitz's supervisor, Lewis, sent her a retaliatory letter accusing her of "FMLA fraud" and violating the Company's outside employment policy—all based on the fact that, while on leave, Liebowitz was posting parenting tips and videos of her children on Instagram.

3. These accusations were facially absurd and blatantly pretextual.

4. Liebowitz's job was to develop and implement marketing initiatives at the strategic planning level.

5. She did not even manage or post on the Company's social media accounts.

6. Nothing about her occasional posting on social media indicates that she misrepresented her inability to work during her FMLA leave.

7.      Indeed, Liebowitz's Instagram account had approximately 389 followers at the time, and has never earned her any income.

8.      Meanwhile, several Colliers employees host podcasts, release music albums, run YouTube channels, operate Airbnb rentals, and maintain freelance businesses—all without discipline for engaging in "outside employment".

9.      Liebowitz was targeted based on her disabilities and request for FMLA leave, plain and simple.

10.     After Liebowitz refuted these baseless accusations, asserted her rights under federal and State law, and sought to coordinate her eventual return to work, Defendants unceremoniously terminated her employment.

11.     To redress these wrongs, Liebowitz brings claims for violations of: (i) the Family and Medical Leave Act, 29 U.S.C. §§ 2601, *et seq.* ("FMLA"); (ii) the Connecticut Family and Medical Leave Act, C.G.S. §§ 31-51kk, *et seq.* ("CTFMLA"); and (iii) the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101, *et seq*. ("ADA").

## JURISDICTION AND VENUE

12.     Pursuant to 28 U.S.C. §§ 1331 and 1343, the Court has subject matter jurisdiction over this action because it involves federal questions regarding the deprivation of Plaintiff's rights under the FMLA.

13.      Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction of Plaintiff's claims arising under State law.

14.     Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the events or omissions giving rise to this action occurred in this District.

## ADMINISTRATIVE PREREQUISITES

15.     On or around November 20, 2025, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging claims under, *inter alia*, the ADA.

16.     On or around March 25, 2026, Plaintiff received a Notice of Right to Sue from the EEOC.

17.     Fewer than 90 days have passed since Plaintiff received her Notice of Right to Sue.

18.     Shortly after filing this action, Plaintiff intends to file a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO") alleging claims under, *inter alia*, the Connecticut Fair Employment Practices Act, C.G.S. §§ 46a-51, *et seq.* ("FEPA").

19.     After obtaining a Release of Jurisdiction from the CHRO, Plaintiff intends to seek leave of the Court to file an Amended Complaint alleging, *inter alia*, claims under the FEPA.

20.     Any and all other prerequisites to the filing of this action have been met.

## PARTIES

### A.     PLAINTIFF LIANNE LIEBOWITZ

21.     Plaintiff is a resident of the State of Connecticut.

22.     Plaintiff was employed by Defendants from in or around April 2021 through on or around November 10, 2025.

23.     At all relevant times, Plaintiff was an "employee" of Defendants within the meaning of all applicable statutes and regulations.

**B.**     **DEFENDANT COLLIERS INTERNATIONAL USA, LLC**

24.     Colliers is a foreign limited liability company with its principal place of business located at 601 Union Street, Suite 5300, Seattle, Washington 98101.

25.     At all relevant times, Colliers established, implemented, disseminated, and controlled all employment policies applicable to Plaintiff.

26.     At all relevant times, Colliers controlled and directed the terms and conditions of Plaintiff's employment.

27.     At all relevant times, Colliers maintained and exercised the power to hire, fire, discipline, and promote Plaintiff.

28.     At all relevant times, Colliers was Plaintiff's "employer" within the meaning of all applicable statutes and regulations.

**C.**     **DEFENDANT KRISTIN LEWIS**

29.     Lewis is the Vice President of Marketing Operations & Strategy at Colliers.

30.     At all relevant times, Lewis was Plaintiff's immediate supervisor.

31.     At all relevant times, Lewis established, implemented, disseminated, and controlled all employment policies applicable to Plaintiff.

32.     At all relevant times, Lewis controlled and directed the terms and conditions of Plaintiff's employment.

33.     At all relevant times, Lewis maintained and exercised the power to hire, fire, discipline, and promote Plaintiff.

34.     At all relevant times, Lewis was Plaintiff's "employer" within the meaning of all applicable statutes and regulations.

## FACTS

### A.    BACKGROUND

35.    Colliers is a multinational professional services and investment management company serving various sectors across the real estate industry.

36.    In or around April 2021, Colliers hired Liebowitz as Senior Marketing Manager, Occupier Services.

37.    In this role, Liebowitz was responsible for, among other things, planning, developing, and implementing marketing initiatives for the Occupier Services division of Colliers.

38.    Liebowitz reported directly to Lewis, Vice President of Marketing Operations and Strategy.

39.    Liebowitz reported indirectly to Jodie Poirier ("Poirier"), President of Occupier Services.

40.    Liebowitz worked remotely from her home in Weston, Connecticut.

41.    Liebowitz's tenure at Colliers was successful by any measure.

42.    In fact, in April 2025—approximately seven months before terminating her employment—Colliers raised Liebowitz's salary by more than $20,000.

43.    Both Lewis and Poirier told Liebowitz that she was being fast-tracked for promotion to Director.

### B.    LIEBOWITZ'S DISCLOSURE OF DISABILITIES AND REQUEST FOR MEDICAL LEAVE

44.    On or around September 3, 2025, Liebowitz requested a 12-week, FMLA-qualifying leave of absence.

45.    Colliers approved Liebowitz's leave request.

46.    Liebowitz was scheduled to return to work on or around December 3, 2025.

47.    As reflected in documentation from her psychiatrist that was shared with Colliers to support the request for leave, Liebowitz suffers from obsessive compulsive disorder ("OCD") and depression.

48.    Liebowitz also suffers from anxiety, attention-deficit/hyperactivity disorder, and ulcerative colitis.

49.    Liebowitz's disabilities substantially interfere with several major life activities, including, among other things, eating, sleeping, concentrating, thinking, communicating, and working.

50.    Liebowitz's disabilities also substantially interfere with several major bodily functions, including, among other things, her neurological, brain, digestive, and bowel functions.

51.    By way of example, Liebowitz's OCD manifests in the form of compulsive, regular rituals she must complete to get through the day.

52.    Further, her ulcerative colitis causes digestive issues, which are often exacerbated by work-related stress and can disrupt her throughout the day.

53.    Liebowitz's depression and other mental health issues have also caused, among other things, suicidal thoughts, sleep deprivation, and significant weight loss.

## C.    LIEBOWITZ'S SOCIAL MEDIA ACCOUNT

54.    In or around May 2025, Liebowitz created an Instagram account under the handle @diaperdynasty to document and share her life as a mother of four.

55.    Liebowitz primarily posts photos and videos of her family, as well as tips on how parents can use artificial intelligence to save time and reduce stress.

56.    Liebowitz has not earned any income from @diaperdynasty.

**D.     LEWIS'S RETALIATORY LETTER TO LIEBOWITZ IN THE MIDDLE OF HER PROTECTED LEAVE**

57.     On October 23, 2025—*i.e.*, a little more than halfway through her protected leave—Liebowitz received a letter from Lewis (the "Retaliatory Letter").  *See* **Exhibit A**.

58.     In the Retaliatory Letter, Lewis advised Liebowitz that Defendants had become aware of Liebowitz's Instagram account—which, as of October 23, 2025, had approximately 389 followers.

59.     Based on this alone, Lewis: (i) accused Liebowitz of providing "false information" in a medical certification she submitted in connection her request for FMLA leave; (ii) accused Liebowitz of violating the Company's outside employment policy; and (iii) demanded that Liebowitz respond within 48 hours.

60.     Lewis's accusations were and are baseless, absurd, and transparently discriminatory and retaliatory.

61.     Lewis's demand that Liebowitz contact her within such a short window—while Liebowitz was on leave—further reveals Lewis's unlawful motive.

62.     It is readily apparent that Colliers leveled a bogus claim that Liebowitz provided "false information" in connection with her FMLA leave, selectively and improperly enforced its outside employment policy, and then imposed an unreasonable timeline for Liebowitz to respond as a means to push her out of the Company based on her disabilities and protected activities.

**i.     Lewis's Accusation That Liebowitz Provided "False Information" Is Baseless and Was Made in Bad Faith**

63.     According to Lewis, Liebowitz's operation of her social media account indicated that Liebowitz was not, in fact, "unable to work in any capacity," as Liebowitz represented in the medical certification she submitted when she requested FMLA leave.

64.    This was plainly asserted by Lewis in bad faith.

65.    Liebowitz's core responsibilities at Colliers were to develop and implement marketing initiatives at the strategic planning level, not to post on social media.

66.    Indeed, she did not manage or post on any of the Company's social media accounts.

67.    Regardless, nothing about Liebowitz's occasional posting of content concerning her family on @diaperdynasty is inconsistent with her representation that she was unable to perform her role—which, again, involved developing marketing initiatives for a division of Colliers, a real estate, professional services, and asset management firm—during her FMLA leave.

ii.    **Lewis's Accusation That Liebowitz Violated the Company's Outside Employment Policy Is Likewise Baseless and Was Made in Bad Faith**

68.    As noted above, Lewis also accused Liebowitz of engaging in "outside employment" in violation of Colliers policy.

69.    As a preliminary matter, the Off-Duty Conduct & Outside Employment/Business policy then in effect at Colliers does not prohibit outside employment.

70.    Moreover, Lewis's claim that Liebowitz's operation of @diaperdynasty amounted to "outside employment" is nonsense.

71.    The Colliers policy at issue lists the following examples of outside employment: "serving as owner or part-owner of a small or family business; performing services pursuant to a residential real estate license; serving as a board member of another company or nonprofit; working any other capacity with another company, etc."

72.    The policy clearly does not contemplate treating a social media account as "outside employment."

73.    Defendants' claim that Liebowitz violated the policy was pretext for their discriminatory and retaliatory motives.

74.    This is further revealed by Colliers's treatment of other employees.

75.    For example, Ward Richmond ("Richmond"), Vice Chairman of Colliers, has developed a robust social media presence outside of his role at the Company, seemingly for profit.

76.    Richmond hosts a podcast, "Truckin' On with Ward Richmond," which has more than 150 episodes on Spotify.

77.    Further, Richmond has released three music albums on Spotify, the third of which was released on November 21, 2025.

78.    Richmond maintains an active YouTube channel with millions of views, an Instagram account (where he posts, among other things, advertisements for his music and video clips from his podcast), and a list of book recommendations on Amazon.

79.    Additionally, Richmond maintains a website to promote his various extracurricular creative endeavors.

80.    Upon information and belief, Colliers has not cited Richmond for violating the Company's outside employment policy.

81.    Lisa Christianson ("Christianson"), a Senior Vice President at Colliers, also hosts a podcast, "People and Places and How We Use Spaces," which has at least 78 episodes on Spotify.

82.    She also serves as a host on Airbnb, where she rents out her home in Bonita Springs, Florida.

83.    Upon information and belief, Colliers has not cited Christianson for violating the Company's outside employment policy.

84.    Jamie Panico ("Panico"), a Creative Manager on Colliers's U.S. Capital Markets Marketing Team, likewise has for-profit creative pursuits outside of Colliers, including a freelance

graphic design and photography business, as well as an Instagram account and blog to promote that business.

85.    Upon information and belief, Colliers has not cited Panico for violating the Company's outside employment policy.

86.    There are undoubtedly other Colliers employees who run social media accounts, host podcasts, and engage in other pursuits outside of work without being investigated or disciplined by Colliers.

### iii.    The Unreasonable Response Time Demanded by Lewis Further Reveals Her Unlawful Motive

87.    At the close of the Retaliatory Letter—which, again, was sent to Liebowitz in the middle of her FMLA leave—Lewis demanded that Liebowitz contact her within 48 hours.

88.    Given that the Retaliatory Letter was sent to Liebowitz on a Thursday, Lewis effectively sought to impose a 24-hour response deadline.

89.    This is unreasonable, and further underscores the unlawful animus that motivated Defendants' decision to send the Retaliatory Letter.

### E.    LIEBOWITZ'S ASSERTION OF CLAIMS AGAINST COLLIERS

90.    Receiving the Retaliatory Letter while on FMLA leave was traumatizing for Liebowitz and severely exacerbated the symptoms of her disabilities.

91.    Nevertheless, on October 24, 2025, she sent Colliers a letter, through counsel, in order to respond by the effective 24-hour deadline Lewis had imposed.

92.    In her letter, Liebowitz refuted the inaccuracies and mischaracterizations in the Retaliatory Letter.

93.    Further, she asserted claims against Colliers under the FMLA, ADA, CTFMLA, and FEPA.

**F.**     **Unlawful Termination of Liebowitz's Employment**

94.     On November 10, 2025, Colliers sent Liebowitz a letter, through counsel, detailing at length the Company's position that Liebowitz purportedly engaged in "FMLA fraud" and violated the Company's outside employment policy.

95.     In other words, the Company doubled down on its blatantly pretextual stated reasons for investigating Liebowitz in the first place.

96.     At the conclusion of this letter, Colliers advised Liebowitz that the Company would not be reinstating her.

97.     On December 15, 2025, in response to a letter from Liebowitz's counsel offering to reopen a dialogue about facilitating Liebowitz's return to work, Colliers reaffirmed its prior decision to terminate Liebowitz's employment.

**FIRST CAUSE OF ACTION**
**VIOLATIONS OF FMLA: INTERFERENCE**
*(Against Defendants)*

98.     Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

99.     During the full statutory period, Defendants were subject to the provisions of the FMLA and all applicable regulations thereunder.

100.     During the full statutory period, Plaintiff was protected by the provisions of the FMLA and all applicable regulations thereunder.

101.     As set forth above, on or around September 3, 2025, Plaintiff requested FMLA-qualifying leave, which was scheduled to conclude on or around December 3, 2025.

102.    By the actions described above, among others, Defendants unlawfully interfered with Plaintiff's rights under the FMLA by, *inter alia*, sending her the Retaliatory Letter and terminating her employment.

103.    Defendants' unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the FMLA.

104.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law.

<u>**SECOND CAUSE OF ACTION**</u>
<u>**VIOLATIONS OF THE FMLA: RETALIATION**</u>
*(Against Defendants)*

105.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

106.    During the full statutory period, Defendants were subject to the provisions of the FMLA and all applicable regulations thereunder.

107.    During the full statutory period, Plaintiff was protected by the provisions of the FMLA and all applicable regulations thereunder.

108.    As set forth above, on or around September 3, 2025, Plaintiff requested FMLA-qualifying leave, which was scheduled to conclude on or around December 3, 2025.

109.    By the actions described above, among others, Defendants unlawfully retaliated against Plaintiff for exercising her rights under the FMLA by, *inter alia*, terminating her employment prior to the conclusion.

110.    Defendants' unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the FMLA.

111.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law.

### THIRD CAUSE OF ACTION
### VIOLATIONS OF THE CTFMLA: INTERFERENCE
*(Against Colliers)*

112.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

113.    During the full statutory period, Colliers was subject to the provisions of the CTFMLA and all applicable regulations thereunder.

114.    During the full statutory period, Plaintiff was protected by the provisions of the CTFMLA and all applicable regulations thereunder.

115.    As set forth above, on or around September 3, 2025, Plaintiff requested CTFMLA-qualifying leave, which was scheduled to conclude on or around December 3, 2025.

116.    By the actions described above, among others, Colliers unlawfully interfered with Plaintiff's rights under the CTFMLA by, *inter alia*, sending her the Retaliatory Letter and terminating her employment.

117.    Colliers's unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the CTFMLA.

118.    As a direct and proximate result of Colliers's unlawful conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law.

**FOURTH CAUSE OF ACTION**
**VIOLATIONS OF THE CTFMLA: RETALIATION**
*(Against Colliers)*

119.	Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

120.	During the full statutory period, Colliers was subject to the provisions of the CTFMLA and all applicable regulations thereunder.

121.	During the full statutory period, Plaintiff was protected by the provisions of the CTFMLA and all applicable regulations thereunder.

122.	As set forth above, on or around September 3, 2025, Plaintiff requested CTFMLA-qualifying leave, which was scheduled to conclude on or around December 3, 2025.

123.	By the actions described above, among others, Colliers unlawfully retaliated against Plaintiff for exercising her rights under the CTFMLA by, *inter alia*, sending her the Retaliatory Letter and terminating her employment.

124.	Colliers's unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the CTFMLA.

125.	As a direct and proximate result of Colliers's unlawful conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law.

**FIFTH CAUSE OF ACTION**
**ADA: DISABILITY DISCRIMINATION**
*(Against Colliers Only)*

126.	Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

127. During the full statutory period, Plaintiff was protected by the provisions of the ADA and all applicable regulations thereunder.

128. During the full statutory period, Colliers was subject to the provisions of the ADA and all applicable regulations thereunder.

129. By the actions described above, among others, Colliers discriminated against Plaintiff based on her actual or perceived disabilities in violation of the ADA by, *inter alia*, terminating their employment.

130. Colliers's unlawful discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the ADA.

131. As a direct and proximate result of Colliers's unlawful conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Declare that the practices complained of herein are unlawful under applicable federal and State law;

B. Grant an injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C. Grant Plaintiff an award of damages in an amount to be determined at trial to compensate her for her economic loss;

D. Grant Plaintiff an award of damages in an amount to be determined at trial to compensate her for all non-monetary and/or compensatory damages she has suffered, including,

without limitation, compensation for her mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, and emotional distress;

E.      Grant Plaintiff an award of damages in an amount to be determined at trial for any and all other monetary and/or non-monetary losses she has suffered;

F.      Grant Plaintiff an award of prejudgment interest where applicable;

G.      Grant Plaintiff an award of punitive damages in an amount to be determined at trial;

H.      Grant Plaintiff an award of liquidated damages in an amount to be determined at trial;

I.      Grant Plaintiff an award of reasonable attorneys' fees to the greatest extent permitted by law;

J.      Grant Plaintiff an award of reasonable costs that she has incurred in this action, including, without limitation, expert witness fees;

K.      Grant Plaintiff all other available damages to the greatest extent permitted by law; and

L.      Grant such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues of fact and damages.

Dated:  April 9, 2026
        Stamford, Connecticut

Respectfully submitted,

*/s/ Zachary L. Rubin*
Zachary L. Rubin, Esq. (ct30192)
ZLR Litigation, PLLC
456 Glenbrook Rd, Suite 11 #638
Stamford, Connecticut 06960
(203) 212-9983
zach@zlrlitigation.com

*/s/ Alex J. Hartzband*
Alex J. Hartzband, Esq.*
Grubin Law Group, P.C.
1270 Avenue of the Americas, Floor 7
New York, New York 10020
(212) 653-0631
ahartzband@grubinlaw.com

*pro hac vice application forthcoming*

Attorneys for Plaintiff