**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| LIANNE LIEBOWITZ,<br><br>Plaintiff,<br><br>v.<br><br>COLLIERS INTERNATIONAL USA, LLC and KRISTIN LEWIS,<br><br>Defendants. | Case No.: 3:26-cv-00547-KAD |

**MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANTS' MOTION**
**TO DISMISS COUNTS I AND III OF THE AMENDED COMPLAINT**

## TABLE OF CONTENTS


PRELIMINARY STATEMENT ..... 1

RELEVANT FACTS ..... 2

PROCEDURAL HISTORY ..... 6

ARGUMENT ..... 7

I. LEGAL STANDARDS ..... 7

II. PLAINTIFF ADEQUATELY PLEADS FMLA AND CTFMLA INTERFERENCE CLAIMS ..... 7

A. *Kemp v. Regeneron Pharmaceuticals, Inc.* and Its Impact on the Court's Analysis ..... 8

B. Defendants Terminated Liebowitz's Employment on November 10, 2025, With Roughly Three Weeks of Her FMLA/CTFMLA Leave Remaining ..... 9

C. Defendants Engaged in Interference Even Before They Terminated Liebowitz's Employment ..... 11

i. Defendants' Frivolous Investigation Independently Constitutes Interference ..... 12

ii. Defendants' Demand That Liebowitz Respond Within 24 Hours Functioned as a Demand That She Work While on Leave ..... 14

III. LIEBOWITZ'S INTERFERENCE CLAIMS ARE NOT DUPLICATIVE OF HER RETALIATION CLAIMS ..... 16

CONCLUSION ..... 19

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........ 7

*Blake v. Recovery Network of Programs, Inc.*, 655 F. Supp. 3d 39 (D. Conn. 2023) ........ 17

*Cendant Corp. v. Comm'r of Lab.*, 276 Conn. 16 (2005) ........ 8

*Cooper v. Parsky*, 140 F.3d 433 (2d Cir. 1998) ........ 7

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ........ 6

*Erickson v. Pardus*, 551 U.S. 89 (2007) ........ 7

*Fu v. Consol. Edison Co. of N.Y., Inc.*, 855 F. App'x 787 (2d Cir. 2021) ........ 15

*Gamma Traders - I LLC v. Merrill Lynch Commodities, Inc.*,
41 F.4th 71 (2d Cir. 2022) ........ 7, 10, 11

*Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415 (2d Cir. 2016) ........ 8, 9

*Greenberg v. State Univ. Hosp.-Downstate Med. Ctr.*, 838 F. App'x 603 (2d Cir. 2020) ........ 15

*Grosz v. Museum of Mod. Art*, 772 F. Supp. 2d 473 (S.D.N.Y.), *aff'd*,
403 F. App'x 575 (2d Cir. 2010) ........ 6

*Haran v. Orange Business Services, Inc.*, 160 F.4th 51 (2d Cir. 2025) ........ 13

*Juarez v. Verizon Services Corp.*, 893 F. Supp. 2d 1261 (M.D. Fla. 2012) ........ 12, 13, 17, 18

*Kemp v. Regeneron Pharms., Inc.*, 117 F.4th 63 (2d Cir. 2024) ........ *passim*

*Khan v. Elrac, LLC*, No. 3:23-cv-0003 (KAD), 2024 WL 1344694
(D. Conn. Mar. 29, 2024) ........ 17

*Krause v. Eihab Human Servs., Inc.*, No. 10 CV 898(RJD)(SMG), 2015 WL 4645210
(E.D.N.Y. Aug. 4, 2015) ........ 13

*Landolfi v. Town of N. Haven*, No. 3:22-CV-770, 2024 WL 3925332
(D. Conn. Aug. 23, 2024) ........ 14

*Mehta v. DLA Piper LLP*, No. 23 CIV. 4757 (AT), 2025 WL 2771659 (S.D.N.Y. Sept. 29, 2025) ........ 18

*Palkovic v. Johnson*, 281 F. App'x 63 (2d Cir. 2008) ........ 7

*Potenza v. City of N.Y.*, 365 F.3d 165 (2d Cir. 2004) ........ 15, 18

*Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81 (2002) ........ 16

*Ridgeway v. Royal Bank of Scotland Group*, No. 3:11-cv-976, 2012 WL 1033532 (D. Conn. Mar. 26, 2012) ........ 13, 17

*Sanders v. Zurich Am. Ins. Co.*, 818 F. Supp. 3d 309 (D. Conn. 2026) ........ 18, 19

*Santiago v. Dep't of Transp.*, 50 F. Supp. 3d 136 (D. Conn. 2014) ........ 9, 11

*Scaplen v. United Servs., Inc.*, No. WWCV186014673S, 2020 WL 1030775 (Conn. Super. Ct. Jan. 29, 2020) ........ 15

*Shomo v. City of New York*, 579 F.3d 176 (2d Cir. 2009) ........ 7

*Supino v. SUNY Downstate Med. Ctr.*, No. 19-CV-1315 (ENV) (VMS), 2021 WL 4205181 (E.D.N.Y. Mar. 15, 2021) ........ 14

*Thomsen v. Stantec, Inc.*, 483 F. App'x 620 (2d Cir. 2012) ........ 15

*Woods v. START Treatment & Recovery Centers, Inc.*, 864 F.3d 158 (2d Cir. 2017) ........ 16, 18

*Woolf v. Strada*, 792 F. App'x 143 (2d Cir. 2020) ........ 17, 18

*Zahler v. Empire Merchants, LLC*, No. 11-CV-3163 (JG)(CLP), 2012 WL 273698 (E.D.N.Y. Jan. 31, 2012) ........ 14

**Statutes** **Page(s)**

29 C.F.R. § 825.220 ........ 9

29 U.S.C. §§ 2601, *et seq.* ........ 3, 6, 9

C.G.S. §§ 31-51kk, *et seq.* ........ 6

Fed. R. Civ. P. 12 ........ 7

Fed. R. Civ. P. 8 ........ 7

Plaintiff Lianne Liebowitz ("Plaintiff" or "Liebowitz") hereby submits this memorandum of law in opposition to the motion to dismiss filed by Defendants Colliers International USA, LLC ("Colliers" or the "Company") and Kristin Lewis ("Lewis") (together, "Defendants").

## PRELIMINARY STATEMENT

Defendants ask the Court to dismiss Liebowitz's FMLA and CTFMLA interference claims on a false premise: that she received the entirety of her leave before Defendants terminated her employment. She did not. As the Amended Complaint clearly alleges, and as Colliers's own November 10, 2025 letter confirms, Defendants terminated Liebowitz's employment more than three weeks before her leave was set to conclude. This alone defeats Defendants' motion.

Defendants' motion also fails for an independent reason. Even setting aside the timing of Liebowitz's termination, the Amended Complaint alleges that Colliers interfered with Liebowitz's rights under the FMLA and CTFMLA while her leave was still ongoing—not merely at its end. Roughly three-quarters of the way through her protected leave, Defendants accused Liebowitz of committing "FMLA fraud" based on nothing more than a personal Instagram account where she posted photos of her children. Worse yet, they demanded that she respond and defend herself within 24 hours or forfeit her job. This was not routine administrative contact; it was a coercive ultimatum, directed squarely at the legitimacy of Liebowitz's leave itself, sent while she remained certified as unable to work in any capacity due to disabilities of which Defendants had been made well aware. Investigations and demands of this kind, which discourage an employee from exercising her FMLA rights, are sufficient to state a claim for interference independent of any later adverse action, regardless of whether the employee's leave is ultimately honored in full. Indeed, binding Second Circuit precedent confirms that an employee need not show her leave was ever denied to state a claim for interference—discouragement alone is sufficient. *See Kemp v. Regeneron Pharms., Inc.*, 117 F.4th 63, 69 (2d Cir. 2024).

Defendants' remaining argument—that Liebowitz's interference claims are merely her retaliation claims "in disguise"—fares no better. Unlike the authorities Defendants cite, Liebowitz has not pleaded a bare theory that termination alone interfered with rights she would have enjoyed had she remained employed. Rather, she has pleaded freestanding, coercive conduct that occurred during her leave, entirely apart from her eventual termination. And, as *Kemp* clarifies, these acts provide independent bases to establish interference. Moreover, even if Liebowitz's interference and retaliation claims were premised on entirely the same facts (which they are not), the undersigned is aware of no binding authority requiring dismissal on this basis, and courts—including at least one in this District earlier this year—have exercised their discretion to permit both claims to proceed together where, as here, the retaliation claim will survive regardless and further factual development is warranted.

For these reasons and others set forth below, Defendants' motion should be denied in its entirety.

## RELEVANT FACTS

Liebowitz joined Colliers in April 2021 as Senior Marketing Manager, Occupier Services, reporting directly to Lewis, Vice President of Marketing Operations. *See* Declaration of Alex J. Hartzband, Exhibit A ("Amended Complaint") ¶¶ 38, 40.[1] In this role, she developed and implemented marketing initiatives at the strategic planning level. *Id.* ¶¶ 39, 68. Liebowitz's tenure at Colliers was successful by any measure—she received a $20,000 raise in April 2025 and was on the fast-track to promotion to Director. *Id.* ¶¶ 43-45. Liebowitz is a mother of four, and, in May 2025, she created the Instagram profile, @diaperdynasty, to post about her family life and share parenting tips. *Id.* ¶¶ 57-58.

[1] Unless otherwise noted, all exhibits to the Declaration of Alex J. Hartzband are hereinafter cited as "Ex. __."

In early September 2025, Liebowitz requested a 12-week leave of absence in connection with diagnosed and documented disabilities, including obsessive-compulsive disorder ("OCD") and depression. *Id.* ¶¶ 46-56.[2] Liebowitz's disabilities substantially interfere with several major life activities, including, among other things, eating, sleeping, concentrating, thinking, communicating, and working. *Id.* ¶ 51. Colliers approved Liebowitz's unpaid leave of absence under the Family and Medical Leave Act, 29 U.S.C. §§ 2601, *et seq.* ("FMLA"), and she was set to return to work in December 2025. *Id.* ¶¶ 47-48.

On Thursday, October 23, 2025, in the middle of her protected leave, Liebowitz received a threatening letter from Lewis. *Id.* ¶ 60; Ex. B. In the letter, Lewis advised Liebowitz that Defendants had become aware of Liebowitz's Instagram account—which, as of October 23, 2025, had approximately 389 followers. Amended Complaint ¶ 61. Based on this alone, Defendants accused Liebowitz of: (i) providing "false information" in her medical certification submitted with her leave request by representing that she was "unable to work in any capacity;" and (ii) violating Colliers's outside employment policy. *Id.* ¶ 62. Lewis wrote in her letter that Liebowitz had 48 hours to contact her to discuss "any information that you would like to provide for Colliers' consideration regarding this situation." Ex. B. Given that the letter was sent on a Thursday, Lewis had effectively imposed a 24-hour deadline. Amended Complaint ¶ 66.

Liebowitz alleges Defendants leveled a bogus claim that she provided "false information" in connection with her FMLA leave, selectively and improperly enforced its outside employment policy, and then imposed an unreasonable timeline for her to respond as a means to interfere with her FMLA leave and retaliate against her for exercising her rights under the FMLA. *Id.* ¶ 65.

---

[2] OCD and depression were the two diagnoses mentioned by Liebowitz's provider in her application for leave, but she also suffers from anxiety, attention-deficit/hyperactivity disorder, and ulcerative colitis. Amended Complaint ¶ 51.

Indeed, Lewis's assertion that Liebowitz provided "false information" relies on a false equivocation of Liebowitz's Senior Manager-level job responsibilities with her personal Instagram activity. *Id.* ¶¶ 66-70. Liebowitz was responsible for marketing at the strategic planning level, and her role did not include managing or posting on any of the Company's social media accounts. *Id.* ¶¶ 68-69. Nothing about Liebowitz's occasional posting of content concerning her family is inconsistent with her representation that she was unable to work during her leave, and Defendants' accusation to the contrary was motivated by Liebowitz's protected activities under the FMLA. *Id.* ¶¶ 67, 70.

Further, the suggestion that Liebowitz's operation of an Instagram account constitutes "outside employment" is ludicrous. *Id.* ¶ 71-73. Among other reasons detailed in the Amended Complaint, Colliers's outside employment policy does not even prohibit outside employment, and Liebowitz is aware of several other Colliers employees—and there are surely others of whom she is not aware—who actually engage in external, ostensibly revenue-generating activities, including, without limitation, operating social media accounts and YouTube channels, publishing podcasts, releasing albums, and operating freelance businesses. *Id.* ¶¶ 72-89. Upon information and belief, these individuals have not been cited for violating the Company's outside employment policy. *Id.* ¶¶ 83, 86, 88-89.

On October 24, 2025, Liebowitz responded to Lewis's letter through counsel. *Id.* ¶¶ 94-96; Ex. C. On October 30, 2025, counsel for Liebowitz spoke with Julie Mercer ("Mercer"), then-Senior Corporate Counsel for Colliers, to try to facilitate a resolution of Colliers's investigation and Liebowitz's eventual return to work. *See* Ex. D. Shortly thereafter, counsel for Liebowitz followed up via email to request a copy of the outside employment policy Defendants claim

Liebowitz violated. *See id.* Mercer replied that the matter had been referred to the Company's "litigation team." *Id.*

On November 10, 2025, Gillian Holland ("Holland"), Senior Corporate Counsel, Litigation at Colliers, sent Liebowitz a letter terminating her employment. Amended Complaint ¶¶ 97-99; Ex. E. Holland acknowledged Liebowitz's request to return to work at the conclusion of her leave but stated rather unequivocally that Colliers was not willing to honor that request: "While I understand Ms. Mercer indicated that she would communicate to the business your client's desire to return to her role, please understand that the issue at hand is not merely a policy violation." Ex. E at 2. Holland went on to write that Colliers found Liebowitz's explanation as to why her conduct violated neither the law nor Company policy "unconvincing and irrelevant." *Id.* In closing, Holland accused Liebowitz of "bad faith and intent to mislead," and wrote:

> [Liebowitz's] social media activity was not casual or incidental. It was strategic, public-facing, and directly aligned with her professional responsibilities at Colliers, which include social media strategy, content creation, and digital marketing. Engaging in such activities while certified as medically unable to perform any work and while collecting wage replacement benefits is not only a violation of Company policy, but also a serious abuse of protected leave.
>
> We remain open to discussing this matter, but we will not ignore clear evidence of FMLA fraud. Unless you can provide credible evidence that her activities were not part of a business endeavor and did not violate the terms of her leave and Company policy, she will not be reinstated.

*Id.* at 2.

After receiving Holland's letter, Liebowitz filed her EEOC Charge, wherein she alleged, as she does in the instant action, that Colliers terminated her employment on November 10, 2025. *See* Ex. F ¶¶ 59-61. Thereafter, Colliers sent Liebowitz a letter dated December 8, 2025, wherein the Company tried to walk back its termination and falsely pin the breakdown in discussions about

Liebowitz's return on her. *See* Ex. G. On December 10, 2025, Liebowitz (through counsel) responded to Colliers's letter of December 8, 2025. *See* Ex. H. The December 10, 2025 letter states, in relevant part:

> At the end of the day, Ms. Liebowitz's social media activity speaks for itself. Colliers examined her social media activity and determined, albeit incorrectly, that it provided sufficient pretext to terminate her employment. While we disagree with the Company's determination, we cannot fathom what 'credible evidence' we could produce that would change it. That said, if there is a legitimate, good-faith interest in having Ms. Liebowitz return to work, and you identify documents or information that Colliers would consider 'credible evidence' that she did not violate the terms of her leave and Company policy, I will be happy to discuss the matter with her again and get back to you.

*Id.* at 2.

On December 15, 2025, Colliers responded, falsely suggesting Liebowitz did not comply with the investigation and reiterating that her employment had been terminated. *See* Ex. I.[3]

## PROCEDURAL HISTORY

Plaintiff initiated this action on April 9, 2026. *See* ECF No. 1. Plaintiff filed the Amended Complaint on June 22, 2026. *See* ECF No. 25. In the Amended Complaint, Plaintiff brings claims for, *inter alia*, interference and retaliation under the FMLA and the Connecticut Family and Medical Leave Act, C.G.S. §§ 31-51kk, *et seq.* ("CTFMLA"). *See generally* Amended Complaint.

[3] As Defendants note in their motion (*see* Defs. Br. at 4), documents outside the four corners of the Complaint may be considered on a motion to dismiss where the plaintiff "has relied upon these documents in framing the complaint." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991). Indeed, "[a] court may consider matters outside the pleading for the purposes of adjudicating a motion to dismiss if those documents are 'integral' to a plaintiff's claims—even if the plaintiff fails to append or allude to them to his complaint." *Grosz v. Museum of Mod. Art*, 772 F. Supp. 2d 473, 497 (S.D.N.Y.), *aff'd*, 403 F. App'x 575 (2d Cir. 2010). For example, where "Plaintiffs clearly relied on the entire course of correspondence between the parties when they framed their Complaint," the entire correspondence may be considered even if each communication is not explicitly referenced in the pleadings. *Id.* Here, Defendants have selectively disclosed correspondence between the parties concerning Liebowitz's return to work, thus painting a picture that is less than accurate. To correct this, Liebowitz provides the Court with the parties' complete correspondence.

On July 20, 2026, Defendants filed the instant motion seeking dismissal of Plaintiff's interference claims under the FMLA and CTFMLA. *See* ECF Nos. 27-28.

## ARGUMENT

### I. LEGAL STANDARDS

When deciding a motion to dismiss under Federal Rule of Civil Procedure ("FRCP") 12(b)(6), "[t]he appropriate inquiry is not whether a plaintiff is likely to prevail, but whether the plaintiff is entitled to offer evidence to support her claims." *Palkovic v. Johnson*, 281 F. App'x 63, 66 (2d Cir. 2008). Therefore, the Court must "'accept[ ] all factual allegations in the complaint as true[ ] and draw[ ] all reasonable inferences in the plaintiff's favor.'" *Gamma Traders - I LLC v. Merrill Lynch Commodities, Inc.*, 41 F.4th 71, 77 (2d Cir. 2022) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)) (alterations in original). The Court's task "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998).

FRCP 8(a) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). "Specific facts are not necessary." *Id.* Rather, a plaintiff need only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard "is not akin to a probability requirement[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### II. PLAINTIFF ADEQUATELY PLEADS FMLA AND CTFMLA INTERFERENCE CLAIMS

To state a claim for interference under the FMLA or CTFMLA, a plaintiff must allege: 1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that Defendants "denied or otherwise interfered

with a benefit to which she was entitled under the FMLA." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016).[4]

Defendants dispute only that Liebowitz has pleaded the fifth element of her claim. Specifically, they argue that Liebowitz fails to allege her interference claims because she purportedly received her full entitlement under the FMLA and CTFMLA. *See* ECF No. 28 ("Defs. Br.") at 6. This is wrong for multiple reasons: (i) because Defendants terminated Liebowitz's employment before the expiration of her FMLA/CTFMLA leave; and (ii) because, as the Second Circuit has recently reaffirmed, Defendants' actions prior to terminating her employment—including launching an investigation into purported "fraud" and demanding that she perform work during her leave—independently constitute interference with Liebowitz's protected leave.

### A. ***Kemp v. Regeneron Pharmaceuticals, Inc.*** **and Its Impact on the Court's Analysis**

As a threshold issue prior to reaching Defendants' substantive arguments, it is important to clarify the appropriate standard for evaluating an FMLA (or CTFMLA) interference claim. Defendants take the position that, to establish the fifth element of her claim, Liebowitz must allege that she was "denied benefits" (Defs. Br. at 4-6); however, this is inaccurate. As the Second Circuit recently clarified, *Graziadio*'s "denied benefits" language does not state the full standard; rather, "to succeed on a claim of FMLA interference, a plaintiff must establish that the defendant denied *or otherwise interfered with* a benefit to which she was entitled." *Kemp v. Regeneron Pharms., Inc.*, 117 F.4th 63, 69 (2d Cir. 2024) (quoting *Graziadio*, 817 F.3d at 424) (emphasis in original). Indeed, "an employee is not required to demonstrate an actual denial of benefits to establish a

---

[4] Claims under the CTFMLA are analyzed under the same framework as FMLA claims. *See Cendant Corp. v. Comm'r of Lab.*, 276 Conn. 16, 31 (2005) ("[O]ur legislature has made clear its intention that Connecticut law conform to FMLA and federal regulations promulgated pursuant to the federal statute. We therefore endorse the framework employed by the majority of federal courts[.]")

violation of section 2615(a)(1) and [ ] interference or restraint alone, which includes discouragement, is enough to establish such a violation." *Kemp*, 117 F.4th at 69 (quotation marks omitted). "This holding reflects the statute's plain, unambiguous text, according to which it is unlawful for an employer to '*interfere* with, restrain, *or* deny' FMLA rights." *Id.* (quoting 29 U.S.C. § 2615(a)(1)) (emphasis in original).

The FMLA's implementing regulations support this interpretation of the statute by stating that interference includes, *inter alia*, "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." 29 C.F.R. § 825.220(b). As courts in this District have held even pre-*Kemp*, a plaintiff may sustain an interference claim based on conduct by the employer by alleging that "the employer's purported acts of discouragement would have dissuaded a similarly situated employee of ordinary resolve from attempting to exercise his or her FMLA rights." *Santiago v. Dep't of Transp.*, 50 F. Supp. 3d 136, 144 (D. Conn. 2014) (citation omitted). *Kemp* now makes clear that a claim of interference under a discouragement theory does *not* require a denial of benefits.

Defendants' brief does not address *Kemp* (*see generally* Defs. Br.), and the premise underlying much of their motion—that Liebowitz cannot state an interference claim absent an actual denial of leave—is foreclosed by binding precedent.

### B. Defendants Terminated Liebowitz's Employment on November 10, 2025, With Roughly Three Weeks of Her FMLA/CTFMLA Leave Remaining

Turning to Defendants' substantive arguments, they claim that Liebowitz was terminated after the conclusion of her FMLA leave (*see* Defs. Br. at 6) but this is not true. On the contrary, as detailed above (*see supra* at 5-6), Defendants terminated Liebowitz's employment by letter on November 10, 2025—23 days before she was set to return to work. *See* Amended Complaint ¶¶ 94-96; Ex. E. Because Liebowitz was terminated before the conclusion of her leave, she has

stated a claim for interference insofar as she was denied benefits to which she was entitled under the FMLA (*Graziadio*, *supra*), which remains sufficient—though, per *Kemp*, not necessary—to plead interference. Because the Court must accept the Amended Complaint's factual allegations as true and draw all inferences in Liebowitz's favor (*Gamma Traders*, 41 F.4th at 77), any dispute over this fact must be resolved in Liebowitz's favor at this stage.

Defendants nonetheless insist that they did not terminate Liebowitz until after her leave concluded. *See* Defs. Br. at 6. The text of the November 10, 2025 letter forecloses that argument. *See* Ex. E. Notwithstanding Holland's acknowledgment that Liebowitz wished "to return to work at the end of her leave" (*id.* at 2), Holland made unmistakably clear that reinstatement was not on the table: Liebowitz's explanation was "unconvincing and irrelevant," her conduct reflected "bad faith and intent to mislead," and, absent evidence Colliers itself refused to identify, "she will not be reinstated." *Id.*; *see also supra* at 5 (more fulsome summary of the November 10, 2025 letter). Holland's subsequent lip service to the notion that Colliers purportedly "remain[ed] open to discussing this matter" (*id.*) does not transform an unequivocal termination into an open-ended negotiation.

Colliers's post-hoc correspondence does not save Defendants, either. As set forth above, when counsel for Liebowitz sought the outside employment policy Defendants claimed she violated, Colliers refused to provide it and stated the matter had been referred to its "litigation team." *See* Ex. D. Even after termination, Colliers's conduct followed the same pattern: in the Company's December 8, 2025 letter—sent a full month after the November 10, 2025 letter, and only after Liebowitz had already pursued her EEOC Charge alleging a November 10, 2025 termination (*see* Ex. F)—Colliers attempted to walk back its prior position and recast the breakdown in discussions as Liebowitz's fault. *See* Ex. G. Notably, however, Defendants omit

from their motion that Liebowitz responded to that letter on December 10, 2025, explaining that, while she could not "fathom what 'credible evidence' [she] could produce," she was open to further discussion if Colliers identified what evidence would actually meet that standard. *See* Ex. H at 2. Colliers did not respond to that invitation; it simply reaffirmed the termination on December 15, 2025. *See* Ex. I.

The record, taken as a whole, shows that Defendants terminated Liebowitz's employment on November 10, 2025, and that Colliers's later correspondence was a post-hoc effort to manufacture a different record once Liebowitz pursued her claims before the EEOC. At minimum, the timing of Liebowitz's termination is a factual dispute that must be resolved in her favor on this motion. *See Gamma Traders*, 41 F.4th at 77. Accordingly, the Court should deny Defendants' motion and permit Liebowitz's interference claims to proceed to discovery.

### C. Defendants Engaged in Interference Even Before They Terminated Liebowitz's Employment

Even before Defendants terminated Liebowitz's employment, they engaged in conduct that independently grounds Liebowitz's interference claims. Specifically, in addition to terminating Liebowitz's employment, Defendants engaged in interference by: (i) launching a frivolous investigation into her supposed "FMLA fraud;" and (ii) demanding her immediate participation in the same on 24 hours' notice. Each of these "acts of discouragement would have dissuaded a similarly situated employee of ordinary resolve from attempting to exercise his or her FMLA rights" (*Santiago*, 50 F. Supp. 3d at 144) and, post-*Kemp*, they are independently actionable. *See supra* § II(A).

### i. Defendants' Frivolous Investigation Independently Constitutes Interference

Separate and apart from their termination of Liebowitz prior to the conclusion of her leave, Defendants interfered with Liebowitz's rights under the FMLA and CTFMLA by launching a frivolous and pretextual investigation of her. *See* Amended Complaint ¶¶ 60-65. Here, roughly three-quarters of the way through her leave, Defendants notified Liebowitz that she was being investigated for "FMLA fraud" and breach of a Company policy that Colliers refused to disclose. This in and of itself amounts to interference.

Defendants argue that, because Liebowitz purportedly served the duration of her leave before being terminated, she cannot sustain an interference claim. *See* Defs. Br. at 6-7. Even assuming *arguendo* that Defendants did not terminate Liebowitz prior to the expiration of her leave, this contention is still wrong.

As noted *supra*, there is now binding Second Circuit authority rejecting the notion that an employee must show an actual denial of benefits to state an interference claim. *See Kemp*, 117 F.4th at 69. Indeed, in *Kemp*, the plaintiff's FMLA leave request was never denied—her employer merely discouraged her from using it by limiting her remote work and pressuring her toward paid time off instead. *Id.* at 67-68. The Second Circuit held that this was sufficient to state a claim for interference. *Id.* at 69. The same is true here: even if Liebowitz's leave were construed as having been granted in full, Colliers's baseless investigation and 24-hour ultimatum—conduct plainly designed to discourage her continued use of leave—independently ground her interference claims.

Even pre-*Kemp*, courts have found that an employer may interfere with an employee's FMLA (or CTFMLA) rights without denying benefits. *Juarez v. Verizon Services Corp.*, 893 F. Supp. 2d 1261 (M.D. Fla. 2012), which involves strikingly similar facts, is instructive. In *Juarez*, as the plaintiff neared the end of her leave, Verizon launched an investigation "to examine whether

Juarez was fraudulently filing for FMLA leave." *Id.* Ultimately, the plaintiff returned, albeit in a modified position that she alleged amounted to a demotion. *Id.* On these facts, the *Juarez* court found a reasonable juror could conclude that Verizon interfered with the plaintiff's rights under the FMLA "by launching frivolous and unwarranted investigations against her upon her use of FMLA leave" and preventing her from returning her to comparable position upon her return, as these actions "were designed to discourage Juarez from taking FMLA leave." *Id.* at 1269.[5]

Similarly, in *Ridgeway v. Royal Bank of Scotland Group*, No. 3:11-cv-976, 2012 WL 1033532 (D. Conn. Mar. 26, 2012), the plaintiff took FMLA and CTFMLA leave for the full statutory period before his employer terminated him. *Id.* at *1-3. While he was still on leave, his employer sent him a series of communications regarding his leave status, including a letter that misrepresented how much of his FMLA leave had been exhausted. *Id.* On these facts, the *Ridgeway* court declined to dismiss the plaintiff's interference claim, finding that the employer's communications during the plaintiff's leave constituted discouragement, as they "could have prompted Ridgeway to abandon his leave and attempt to return to work prematurely"—even though they did not. *Id.* at *9. The court reached this conclusion notwithstanding the fact that the plaintiff ultimately received the entirety of his leave before being terminated. *See id.*

*Juarez* and *Ridgeway*, and certainly *Kemp*, confirm that an employee's eventual receipt of her full leave entitlement does not foreclose an interference claim premised on employer conduct occurring during that leave. On the contrary, baseless investigations of the kind launched against

---

[5] In *Krause v. Eihab Human Servs., Inc.*, No. 10 CV 898(RJD)(SMG), 2015 WL 4645210, at *14 (E.D.N.Y. Aug. 4, 2015), the court declined to follow *Juarez* because the *Krause* plaintiff expressly disavowed any discouragement theory by making "clear her view that the investigation was launched not to discourage her from taking medical leave." Conversely, in both *Juarez* and the case at bar, the investigations were expressly based on allegations that the plaintiff had committed fraud by taking FMLA leave.

Liebowitz are sufficient to state a claim, regardless of Defendants' contention that they waited until the end of Liebowitz's leave to terminate her.[6]

#### ii. Defendants' Demand That Liebowitz Respond Within 24 Hours Functioned as a Demand That She Work While on Leave

Moreover, Colliers's demand that Liebowitz—while still on leave, and while suffering from disabilities that substantially impaired her ability to concentrate, think, and communicate (*see* Amended Complaint ¶ 51)—drop everything to respond to and rebut a formal accusation of fraud within 24 hours functioned as a demand that she perform work during her protected leave. Complying with Defendants' demand required Liebowitz to shift her attention from recovery to this dispute: reviewing and processing the accusations against her, formulating a response, and preparing to defend herself on a compressed timeline, all while medically certified as unable to work in any capacity. This is the same kind of employer-directed engagement that courts in this Circuit have found sufficient to state a claim for interference. *See, e.g.*, *Landolfi v. Town of N. Haven*, No. 3:22-CV-770, 2024 WL 3925332, at *6 (D. Conn. Aug. 23, 2024) (finding that requiring plaintiff to "perform work at home and at the office" while on FMLA leave "constitutes a denial of leave"); *Supino v. SUNY Downstate Med. Ctr.*, No. 19-CV-1315 (ENV) (VMS), 2021 WL 4205181, at *12 (E.D.N.Y. Mar. 15, 2021) (denying motion to dismiss where plaintiff was asked to complete a discrete task by phone while on leave, over her objection that she did not feel well enough to do so); *Zahler v. Empire Merchants, LLC*, No. 11-CV-3163 (JG)(CLP), 2012 WL 273698, at *8 (E.D.N.Y. Jan. 31, 2012) (denying motion to dismiss where supervisor "aggressively

---

[6] *Haran v. Orange Business Services, Inc.*, 160 F.4th 51 (2d Cir. 2025) reinforces the same point from the opposite direction. There, the court rejected a discouragement-based interference theory because the supervisor's criticism was "specific to [the plaintiff's] job performance . . . not her requests for leave," and there was "no objective evidence that [the supervisor's] criticism related to her FMLA-eligible absences." *Id.* at 58. Here, by contrast, Defendants' investigation and 24-hour ultimatum were not directed at Liebowitz's general job performance—they were directed exclusively at her leave itself. *Haran* thus draws precisely the distinction that separates a viable discouragement theory from an unviable one, and Liebowitz's allegations fall on the viable side of that line.

demanded" that plaintiff produce a work product while she was at the hospital, under threat of losing an account).

If anything, the burden Defendants imposed on Liebowitz exceeds the tasks at issue in these cases. Unlike a single phone call to overturn a vote or a request to produce a survey, Defendants required Liebowitz to mount a defense to termination-level accusations, effectively on a 24-hour clock, while she was on leave specifically because her disabilities left her unable to perform any work in the first place. Requiring precisely the kind of sustained cognitive and administrative effort her leave was meant to protect her from—under threat of losing her job if she failed to comply—is, if anything, a more severe interference with her right to uninterrupted leave. If demanding that an employee perform discrete job-related tasks (or even a single discrete job-related task) while on leave is sufficient to state a claim for interference, then demanding that an employee personally defend her job and her medical certification under threat of termination as part of a frivolous, pretextual investigation, on an even shorter timeline, is sufficient *a fortiori*.

The cases cited by Defendants (Defs. Br. at 5-6) are readily distinguishable, as each involved a plaintiff who identified no employer conduct occurring during leave at all; rather, the plaintiffs' interference theories rested entirely on a post-return adverse action following receipt of their full leave under the FMLA. *See Fu v. Consol. Edison Co. of N.Y., Inc.*, 855 F. App'x 787, 791 (2d Cir. 2021) (plaintiff pled no discouragement or other conduct during leave); *Greenberg v. State Univ. Hosp.-Downstate Med. Ctr.*, 838 F. App'x 603, 606 (2d Cir. 2020) (interference claim failed where plaintiff received the full leave he requested, fully compensated, and identified no separate pre-termination conduct); *Thomsen v. Stantec, Inc.*, 483 F. App'x 620, 622 (2d Cir. 2012) (rejecting interference claim where plaintiff failed to show that the employer "discouraged him from using [FMLA] leave," and his theory rested solely on the fact that termination "necessarily

prevented him from taking future FMLA leave"); *Potenza v. City of N.Y.*, 365 F.3d 165, 168 (2d Cir. 2004) (interference theory based on demotion two months after return from leave, with no allegation of conduct occurring during leave); *Scaplen v. United Servs., Inc.*, No. WWCV186014673S, 2020 WL 1030775, at *5 (Conn. Super. Ct. Jan. 29, 2020) (striking interference count premised solely on suspension and termination "upon her return" from leave, with no allegation that leave itself was denied, discouraged, or otherwise interfered with).[7] Unlike the plaintiffs in these cases, Liebowitz has pleaded precisely the kind of *ex ante* conduct that establishes an interference claim: Colliers's frivolous FMLA-fraud investigation and coercive 24-hour ultimatum, both of which occurred while Liebowitz remained on leave.[8]

## III. LIEBOWITZ'S INTERFERENCE CLAIMS ARE NOT DUPLICATIVE OF HER RETALIATION CLAIMS

Defendants argue that Liebowitz's interference claims should be dismissed because they purportedly arise out of the same allegations. This is simply not true. While Liebowitz's interference and retaliation claims both arise out of her termination, the Amended Complaint alleges freestanding acts of interference wholly independent of her eventual termination: Defendants' launching of a frivolous investigation and demanding her immediate participation in the same while her leave was ongoing. Amended Complaint ¶¶ 57-89. And as *Kemp* makes clear, these acts provide independent bases for Liebowitz's interference claims. *See* 117 F.4th at 69.

---

[7] Defendants' two remaining citations—*Woods v. START Treatment & Recovery Centers, Inc.*, 864 F.3d 158 (2d Cir. 2017) and *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81 (2002)—are inapposite for other reasons. *Woods* did not involve the dismissal of an interference claim for want of pre-termination conduct; rather, the plaintiff's interference and retaliation claims were both tried to a jury, which returned a complete defense verdict. 864 F.3d at 165. The Second Circuit's opinion addresses only alleged errors in the jury instructions given at that trial. *Id.* at 166-71. *Ragsdale* does not address the sufficiency of a pleaded *ex ante* theory at all. Instead, it holds that a Department of Labor regulation imposing an automatic, prejudice-independent penalty on employers who failed to formally designate leave as FMLA leave exceeded the agency's statutory authority. 535 U.S. at 89-90, 96.

[8] Moreover, to the extent the decisions cited by Defendants can be read to require proof of an actual denial of leave as a categorical matter, that reading does not survive *Kemp*. *See* 117 F.4th at 69.

Lewis's October 23, 2025 letter launching the sham investigation did not merely criticize Liebowitz's unrelated job performance—it directly attacked the legitimacy of her leave itself, accusing her of submitting "false information" in her FMLA medical certification and threatening termination unless she justified her conduct within an effective 24-hour window. Amended Complaint ¶¶ 58-59, 87-88. Further, Liebowitz alleges that receiving this letter while on leave was "traumatizing" and "severely exacerbated the symptoms of her disabilities"—injuries flowing directly from the interference itself, independent of and prior to any termination decision. *Id.* ¶ 90. This conduct closely parallels *Juarez*, where the court found a triable interference claim based on the employer's investigation into whether the plaintiff was "fraudulently filing for FMLA leave" while she remained on leave—even though, like Liebowitz, she ultimately received her full requested leave—and found a retaliation claim to be separately actionable based on the plaintiff's eventual termination. 893 F. Supp. 2d at 1269. Accordingly, the Court should permit Liebowitz's interference claims to proceed alongside her retaliation claims.

The cases relied upon by Defendants (*see* Defs. Br. at 8) are inapposite, as each shares a common feature the Amended Complaint does not: the plaintiff's interference theory rested entirely on the fact of termination following a fully-granted leave, with no separate act of interference during the leave itself. *See Woolf v. Strada*, 792 F. App'x 143, 145-46 (2d Cir. 2020) (summary order) (holding that, where "all of Woolf's requests for leave were granted" and Woolf "failed to produce any evidence that his supervisors dissuaded him from taking any leave," his interference claim "relate[d] to his firing" and was therefore duplicative); *Blake v. Recovery Network of Programs, Inc.*, 655 F. Supp. 3d 39, 48 (D. Conn. 2023) (dismissing interference claim premised solely on the theory that termination prevented the plaintiff from exercising rights she would have had if she remained employed); *Khan v. Elrac, LLC*, No. 3:23-cv-0003 (KAD), 2024

WL 1344694, at *5 (D. Conn. Mar. 29, 2024) (dismissing interference claim that "derive[d] entirely from" termination, where plaintiff pleaded no *ex ante* discouragement). As set forth above (*see supra* § II(C)), Liebowitz's interference claims are not so limited: she has pleaded distinct acts of interference occurring during her leave, separate and apart from her termination.

The only remaining decision Defendants cite is *Ridgeway*; however, as noted above, the *Ridgeway* court denied the defendants' motion to dismiss and allowed the interference claims to proceed alongside retaliation claims based on independent, pre-termination conduct that discouraged the plaintiff's exercise of his rights, just as in *Juarez*, *supra*, and the case at bar. Put differently, rather than showing that Liebowitz's claims are duplicative, *Ridgeway* proves that interference and retaliation claims of the exact kind brought here can proceed side by side.

Even assuming *arguendo* that Liebowitz's interference and retaliation claims were premised on the same factual allegations, this still would not warrant dismissal. As Defendants note (*see* Defs. Br. at 8), interference and retaliation "serve as *ex ante* and *ex post* protections for employees who seek to avail themselves of rights granted by the FMLA." *Woods*, 864 F.3d at 166. They also require proof of different elements. Whereas retaliation claims require proof that the defendant was motivated by the plaintiff's exercise of her FMLA rights, intent is immaterial to an interference claim. *See Potenza*, 365 F.3d at 168 ("[I]t would be appropriate to apply the *McDonnell Douglas* analysis to claims of retaliation—where the employer's intent is material—but not to assertions of interference—where the question is simply whether the employer in some manner impeded the employee's exercise of his or her right.").

For these reasons, "[c]ourts have generally allowed [] dual interference-retaliation claims to proceed as non-duplicative." *Mehta v. DLA Piper LLP*, No. 23 CIV. 4757 (AT), 2025 WL 2771659, at *9 (S.D.N.Y. Sept. 29, 2025). While some courts have dismissed interference claims

premised solely on a termination of employment as duplicative, the undersigned is aware of no binding authority on this point.[9] *See Sanders v. Zurich Am. Ins. Co.*, 818 F. Supp. 3d 309, 322 (D. Conn. 2026) ("Neither the parties' briefing nor my research has identified any binding authority addressing whether (1) an FMLA interference claim can proceed where it is rooted in the same operative facts as the retaliation claim or (2) claims of interference-by-termination should be evaluated only under the framework for retaliation."). Accordingly, just as at least one other judge in this District has done as recently as this year, the Court should permit Liebowitz's interference claims to proceed alongside her retaliation claims. This is particularly warranted here, where the date of Liebowitz's termination is in dispute. *See supra* at 9-11; *Sanders*, 818 F. Supp. 3d at 322 ("[I]n light of the still sparse factual record before me, and because the retaliation claim will in any event survive, I exercise my discretion to deny Zurich's motion to dismiss the interference claim in order to permit further development of the record.").

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motion in its entirety, together with such other and further relief as the Court deems just and proper.

Dated: August 24, 2026
New York, New York

**GRUBIN LAW GROUP, P.C.**

By: */s/ Alex J. Hartzband*
Scott G. Grubin (#CT04774)
Alex J. Hartzband (#PHV08954)

1270 Avenue of the Americas, Floor 7
New York, New York 10020
(212) 653-0631
sgrubin@grubinlaw.com
ahartzband@grubinlaw.com

[9] *Woolf* (*see supra* at 17), while decided by the Second Circuit, is a non-precedential summary order. *See generally* 792 F. App'x 143.

**ZLR LITIGATION, PLLC**

Zachary L. Rubin (#CT30192)
456 Glenbrook Road, Suite 11 #638
Stamford, Connecticut 06960
(203) 212-9983
zach@zlrlitigation.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I, ALEX J. HARTZBAND, hereby certify that, on August 24, 2026, I caused a true and correct copy of the foregoing Memorandum of Law in Opposition to Defendants' Motion to Dismiss Counts I and III of the Amended Complaint to be filed through the Court's ECF system. As such, it will be sent electronically to all registered participants identified on the Notice of Electronic Filing. Paper copies will be sent to those indicated as non-registered participants.

*/s/ Alex J. Hartzband*
Alex J. Hartzband