**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| LIANNE LIEBOWITZ,<br><br>Plaintiff,<br><br>v.<br><br>COLLIERS INTERNATIONAL USA, LLC, and KRISTIN LEWIS,<br><br>Defendants. | Case No. 3:26-cv-00547-KAD<br><br>September 2, 2026 |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COUNTS I AND III OF PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff's Opposition confirms that Plaintiff's FMLA and CTFMLA interference claims should be dismissed. The documents attached to or fairly incorporated into the FAC demonstrate that Colliers did not terminate Plaintiff's employment until *after* her leave ended. The documents speak for themselves. Plaintiff's subjective characterizations of those documents are entitled to no weight in the Court's analysis. Further, Colliers' routine investigation into Plaintiff's apparent abuse of leave benefits does not constitute interference, as a matter of law. The FMLA and CTFMLA protect an employee's right to qualifying leave – they do not provide employees with immunity from employer inquiry. Finally, Plaintiff's interference claims separately fail because they simply repackage her retaliation claims. For all of the reasons discussed herein and in Colliers' opening brief, Counts I and III are subject to dismissal as a matter of law.

## I. The Motion to Dismiss Is Not Based on a "False Premise," As Plaintiff Contends, But Rather on the Undisputable Documentary Record.

Plaintiff asserts that Defendants' Motion to Dismiss is based on a "false premise: that she received the entirety of her leave before [Colliers] terminated her employment." (Opp. 1.) This false premise assertion is baseless. The Court need only look to the November 10, 2025 letter, which states, in pertinent part:

> ***We remain open to discussing this matter***, but we will not ignore clear evidence of FMLA fraud. ***Unless you can provide credible evidence*** that [Plaintiff's] activities were not part of a business endeavor and did not violate the terms of her leave and Company policy, ***she will not be reinstated***.

ECF No. 28-1, p. 3 (emphasis added). This is not a statement that termination has occurred or is occurring. As a matter of plain English, it is a statement that termination will happen at a future date absent further information from Plaintiff.

The December 8, 2025 letter then confirms that Plaintiff's termination did not occur until after she received her full leave benefit, which expired on November 28, 2025. That letter stated:

> As we have not received a response to our November 10 correspondence requesting additional information regarding [Plaintiff's] conduct, ***we would like to provide her with an additional opportunity to confirm whether she intends to submit any further information in response to the November 10 letter. If she is able to do so in a satisfactory manner, she will be able to continue her employment. If we do not receive confirmation*** by December 10, 2025 that she intends to provide additional information, we will proceed with updating our records to reflect that [Plaintiff's] last day of employment with Colliers as December 3, 2025.

ECF No. 28-2, p. 2 (emphasis added). Thus, the documents attached to or fairly incorporated into the Complaint establish that Colliers did not in fact terminate Plaintiff's employment until after her leave ended.

Contrary to Plaintiff's suggestion, Colliers' notice that her employment would end in the future if she was unable to demonstrate that she was not engaged in abuse of her leave benefits does not constitute a termination. *See, e.g., Moran v. Wegmans Food Markets, Inc.*, 65 F. Supp. 3d 327, 331 (W.D.N.Y. 2014) ("mere 'threats' to terminate one's employment do not, by themselves, constitute adverse employment actions."). Plaintiff's subjective characterization of the documents is entitled to no weight. *Salerno v. City of Niagara Falls*, No. 20-3749-CV, 2021 U.S. App. LEXIS 29983, at *3 (2d Cir. Oct. 6, 2021) ("where a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true[.]") (citation omitted).

At bottom, Plaintiff's leave ended on November 28, 2025, and the termination of her employment occurred on December 3, 2025 – the same date she was expected to return to work. FAC ¶ 48; ECF No. 34-9, p. 2. Because she received her entire leave benefit before the termination of her employment, Plaintiff's primary argument and interference claims fail as a matter of law.

## II. Colliers' Act of Questioning Plaintiff About Her Suspected Leave Abuse Is Not Interference as a Matter of Law.

Plaintiff's theory that employers cannot investigate suspected leave abuse without engaging in actionable interference is baseless and contrary to controlling authority. The FMLA does not immunize employees from reasonable employer inquiry into suspected misuse of leave. *See Dapkus v. Arthur J. Gallagher Serv. Co., LLC*, No. 3:19-cv-01583 (KAD), 2022 U.S. Dist. LEXIS 68928, at *10-11, 24-25 (D. Conn. Apr. 14, 2022) (granting summary judgment on FMLA interference claim where the employer terminated the employee after she failed to provide information necessary to verify the accuracy of her FMLA designation, which it requested because of suspected FMLA fraud); *Haran v. Orange Bus. Servs., Inc.*, 160 F.4th 51, 57 (2d Cir. 2025) (explaining that performance criticism unrelated to leave, where leave was fully granted, does not establish interference); *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 175 (2d Cir. 2006) (recognizing that an employer does not need to reinstate an employee after FMLA leave where the leave and request to return were not a negative factor in the decision to terminate). In fact, the FMLA regulations specifically authorize employers to investigate leave abuse where the "employer receives information that casts doubt on the employee's stated reason for the absence[.]" 29 CFR § 825.308(c)(3). While a plaintiff may pursue an interference claim based on alleged "discouragement," such a claim requires more than ordinary employer communications or criticism. *See Haran*, 160 F.4th at 57 (dismissing interference claim premised on allegations that the plaintiff was subjected to undue scrutiny and criticism after requesting leave). "That is true

even if the employee subjectively feels pressure due to the criticism and decides to take less leave than she otherwise would have." *Id.*

Plaintiff relies heavily on *Kemp v. Regeneron Pharms., Inc.*, 117 F.4th 63 (2d Cir. 2024) to argue that Colliers' investigation into her leave abuse constituted FMLA interference. However, *Kemp* did not hold that an employer's communication with an employee about leave alone constitutes interference. Nor did *Kemp* announce a new standard for FMLA interference claims. Rather, consistent with *Graziadio*, it held that in order to state a claim for FMLA interference, a plaintiff must plausibly allege that the employer denied or otherwise interfered with a benefit to which she was entitled under the FMLA. *Kemp,* 117 F.4th at 69 (citing *Graziadio v. Culinary Institute of America*, 817 F.3d 415 (2d Cir. 2016))[1]; *see also Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 166 (2d Cir. 2017) ("an employee brings an 'interference' claim when her employer has prevented or otherwise impeded the employee's ability to exercise rights under the FMLA."). Plaintiff's FAC makes no such showing here.

Colliers' October 23, 2025 and November 10, 2025 letters to Plaintiff requested information regarding Plaintiff's public-facing social media activities which were inconsistent with her healthcare provider's certification that she was "unable to work in any capacity." FAC ¶ 66. Those communications did not deny, revoke, or reduce Plaintiff's leave; they did not require Plaintiff to return to work or condition continued leave on the performance of job duties; and they did nothing to actually discourage Plaintiff from using any benefit to which she was entitled under the FMLA or CTFMLA. Instead, they asked Plaintiff to address Colliers' concerns that, "while on

[1] Plaintiff misstates the holding in *Kemp*. The court in *Kemp* recognized that discouragement may constitute interference, but held that the plaintiff's claim ultimately failed for statute-of-limitations reasons. 117 F.4th at 69. The court also held that plaintiff's claim that the employer discouraged her from using her approved intermittent FMLA leave by allegedly limiting her ability to work remotely did not state a claim under the FMLA, which only protects a right to take leave and does not entitle employees to work remotely. *Id.* at 69-70. Thus, the court did not hold that plaintiff's claims were sufficient to state a claim for interference. *Id.*

medical leave, certified as unable to work and collecting disability benefits, [Plaintiff] was actively attempting to build a brand and pursue monetization opportunities," including by establishing a "shop my" profile, a platform designed for earning commissions through affiliate links; declaring on her Amazon storefront that Diaper Dynasty "earns commissions"; posting on Instagram: "Just give me 3 months and I'll have 10k followers so I can quit my job . . . "; and publicly describing Diaper Dynasty on "Collabstr" as a "relatable parenting + lifestyle brand." ECF No. 28-1, pp. 2-3.

These brand-building, monetization, and marketing activities provided Colliers with a legitimate basis to question Plaintiff regarding her activities during leave. Employers must be able to investigate the legitimacy of employee use of leave. Accordingly, courts have rejected efforts to recast such inquiries as FMLA interference. *See Dapkus*, 2022 U.S. Dist. LEXIS 68928, at *23-25; *see also Genova v. City of Glen Cove*, No. 13-CV-4088 (JMA)(SIL), 2017 U.S. Dist. LEXIS 25730, at *83-84 (E.D.N.Y. Feb. 22, 2017) (holding that "[e]mployers do not commit an unlawful act simply by contacting an employee to ascertain details regarding the employee's medical condition"); *Barnes v. City of Coon Rapids, Minn.*, No. 07-3672, 2009 U.S. Dist. LEXIS 37139, at *4 (D. Minn. Apr. 30, 2009) (finding that municipal employer did not engage in interference when it repeatedly attempted to contact employee on FMLA leave to clarify his medical condition). Indeed, to hold otherwise would require employers to ignore information suggesting that an employee's reported limitations may be inaccurate, even where the employer acts during the leave period only to request information and preserve its ability to evaluate suspected misuse. Nothing in the FMLA or CTFMLA requires that result. Those statutes protect an employee's right to take qualifying leave; they do not foreclose an employer from confirming that leave is being used for its certified purpose. *See, e.g., Worster v. Carlson Wagonlit Travel, Inc.*, No. 3:02CV167 (EBB),

2005 U.S. Dist. LEXIS 33285, at *9 (D. Conn. July 6 2005) ("an employer who honestly believes that it is terminating an employee who obtained FMLA leave fraudulently will not be liable even if the employer is mistaken in its belief") (citations omitted); *Krause v. Eihab Human Servs.*, No. 10 CV 898 (RJD) (SMG), 2015 LEXIS 101820, at *36-37 (E.D.N.Y. Aug. 4, 2015) (holding that asking employee to participate in an investigation into allegedly fraudulent conduct during her leave was not a communication that required the employee to produce work product or otherwise interfered with her leave).[2] In fact, those statutes specifically authorize employers to investigate where the legitimacy of an employee's FMLA use is in question. *See* 29 CFR 825.308(c)(3). Such investigations are contemplated by the FMLA regulations and, absent additional coercive conduct, do not constitute actionable interference. *Id.*

The cases to which Plaintiff cites do not compel a different result. In *Juarez*, for example, the plaintiff plausibly alleged that her employer removed her management responsibilities and incentive-based compensation structure, preventing her from returning to the same or a comparable position after she returned from leave. *Juarez v. Verizon Servs. Corp.*, 893 F. Supp. 2d 1261, 1269 (M.D. Fla. 2012). Likewise, in *Ridgeway v. Royal Bank of Scotland Group*, the plaintiff alleged that the employer provided incorrect information about his available leave, thereby "den[ying] him the ability to understand his rights and benefits under the FMLA and thereby frustrat[ing] his efforts to exercise those rights." No. 3:11-cv-976 (VLB), 2012 U.S. Dist. LEXIS 41995, at *23-25 (D. Conn. Mar. 26, 2012). The FAC alleges nothing comparable here.

Indeed, unlike *Kemp* and the other cases on which Plaintiff relies, the FAC does not allege that Plaintiff shortened her leave, abandoned her leave, returned early, or refrained from exercising

---

[2] Nor does such outreach constitute a "demand for work." (*See* Opp. 14-16.) As evidenced by the letters themselves, Colliers did not demand that Plaintiff perform work while on leave. Plaintiff's argument minimizes an employer's legitimate interest in investigating suspected leave abuse, particularly where Colliers identified specific information that it believed was inconsistent with Plaintiff's certification that she was "unable to work in any capacity."

any FMLA or CTFMLA right. *See, e.g., Reilly v. Revlon, Inc.*, 620 F. Supp. 2d 524, 535-37 (S.D.N.Y. 2009) (dismissing interference claim brought under a discouragement theory where, despite comments by the plaintiff's manager and calls during leave, she took the scheduled leave and did not perform any work, and therefore the employer did not interfere with her FMLA rights).[3] To the contrary, Plaintiff alleges that, after receiving Colliers' letter, she asserted her statutory rights and remained on leave through its conclusion. FAC ¶ 94-100; ECF No. 34-7, p. 2. Plaintiff's actions—immediately retaining counsel, challenging Defendants' request for information, taking all approved leave, and declining to provide the requested information—contradict any inference that Defendants' conduct would have dissuaded a similarly situated employee of ordinary resolve from exercising FMLA rights. *See Di Giovanna v. Beth Israel Medical Center*, 651 F. Supp. 2d 193, 200–01 (S.D.N.Y. 2009) (dismissing interference claim where, despite allegedly discouraging statements from manager, plaintiff took the days off he wanted). The Opposition therefore fails to plead the required connection between the allegedly discouraging conduct and any actual impairment of Plaintiff's leave rights.

Because the FAC alleges only that Plaintiff received communications concerning Colliers' investigation – not that she was denied leave, deterred from taking leave, or otherwise prevented from exercising any protected right – Counts I and III cannot proceed on an interference theory.

## III. The Interference Claims Remain Duplicative of the Retaliation Claim.

The interference claims in Counts I and III are further subject to dismissal because they are merely duplicates of the FMLA and CTFMLA retaliation claims in Counts II and IV.

[3] *Santiago v. Dep't of Transp.*, cited in the Opposition, differs from the facts here. The plaintiff in *Santiago* put in for retirement and did not take FMLA leave because his manager explicitly threatened the employee with termination for requesting leave under the FMLA. 50 F. Supp. 3d 136, 152 (D. Conn. 2014). Here, Plaintiff's request for leave was approved and Defendants' October 23, 2025 communication merely asked for Plaintiff to contact Colliers in light of information that contradicted her prior representations to the company.

In her Opposition, Plaintiff contends that Colliers' investigation into her marketing and social media activities, including the October 23, 2025 letter, independently support Plaintiff's interference claims because those events allegedly represent adverse actions distinct from the termination of employment underlying Plaintiff's retaliation claim. (Opp. 16-17.) However, the FAC is clear that Plaintiff's interference claim is based on the same alleged conduct as the retaliation claim. *See* FAC ¶¶ 60-76, 104-105, 118-119 (describing the October 23 letter and the Colliers' investigation into Plaintiff's leave abuse as "retaliatory" in multiple instances, including in the interference causes of action). In fact, the FAC fails to identify a single factual allegation in support of the interference claim that is distinct from the retaliation claim. Plaintiff cannot survive dismissal of these Counts by attempting to revise her allegations in opposition to Defendant's Motion to Dismiss. *See Langenback v. 32BJ SEIU*, No. 24-CV-03574 (OEM) (CLP), 2025 U.S. Dist. LEXIS 152306, at *1 n.3 (E.D.N.Y. Aug. 6, 2025), *appeal dismissed*, No. 25-2056, 2026 WL 497816 (2d Cir. Jan. 22, 2026) (discussing the "general rule . . . that a plaintiff may not raise new allegations in her opposition to dismiss[.]").

Defendants cited to numerous cases in the opening brief holding that interference claims that are actually retaliation claims in disguise (such as those at issue here) should be dismissed. *See* Opening Brief, at pp. 7-8.[4] In her Opposition, Plaintiff attempts to overcome dismissal by arguing that, in those cases, the termination of the plaintiffs' employment did not occur until *after* their leave expired, with no separate act of interference during the leave itself. (*See* Opp. 17-19). First, the distinction is immaterial. As the Second Circuit held in *Woolf v. Strada*, an interference

[4] *See Woolf v. Strada*, 792 Fed. Appx. 143, 146 (2d Cir. 2020) (dismissing FMLA interference premised on same grounds as retaliation claim); *Blake v. Recovery Network of Programs, Inc.*, 655 F. Supp. 3d 39, 48 (D. Conn. 2023) (dismissing plaintiff's FMLA interference claim because it was a claim of retaliation in disguise) (citation omitted); *Khan v. Elrac, LLC*, No. 3:23-cv-000003 (KAD), 2024 U.S. Dist. LEXIS 57570 at *16 (D. Conn. Mar. 29, 2024) (dismissing FMLA interference claim because it was premised on her termination, which was duplication of plaintiff's retaliation claim).

claim that is based on a termination is duplicative of an FMLA-retaliation claim and should be dismissed. 792 F. App'x 143, 146 (2d Cir. 2020). Second, as discussed *supra*, Secs. I and II, Plaintiff's termination did not occur until December 3, 2025, *after* her leave expired, and Plaintiff has not alleged any facts demonstrating that Defendants' inquiry into her outside marketing activities dissuaded her from taking and/or completing her leave.[5] As such, this case is analogous to the cases cited in the opening brief, and Counts I and III should be dismissed for the same reasons.

As the Court made clear in *Ridgeway*, 2012 U.S. Dist. LEXIS 41995, at *31, an interference and retaliation claim may proceed together where the factual allegation underpinning each claim are distinct. In *Ridgeway*, the plaintiff alleged that the employer provided him with misleading information, such as informing him that his FMLA leave had been exhausted, which interfered with his attempt to exercise his rights under the FMLA. *Id.* at *20-21. The Court in *Ridgeway* noted that the interference and retaliation claims were distinct because the "complaint explicitly identifie[d] the failure to reinstate as the factual predicate for a retaliation claim rather than as additional support for his interference claim." *Id.* at *28. Here, by contrast, Plaintiff's interference and retaliation claims both rely on the same allegations regarding the October 23 "Retaliatory Letter" and her termination. FAC ¶¶ 104-106, 111-112, 118-119, 125-126.

Thus, because Plaintiff's interference claims are mere duplicates of her retaliation claims, the interference claims should be dismissed.

## **CONCLUSION**

For these reasons, and for the reasons set forth in Defendants' opening brief, the Court should dismiss Counts I and III of the First Amended Complaint with prejudice.

---

[5] Also, as discussed *supra*, 3-6, Colliers was permitted, under the FMLA regulations, to investigate Plaintiff's apparent leave abuse, and such investigation cannot be considered interference (or retaliation). *See* 29 CFR 825.308(c)(3).

Dated: September 2, 2026

Respectfully submitted,

COLLIERS INTERNATIONAL USA, LLC,
and KRISTIN LEWIS,

*_/s/ Anthony S. Califano_*
Anthony S. Califano (ct27323)
acalifano@seyfarth.com
Christopher W. Kelleher, *pro hac vice*
ckelleher@seyfarth.com
Jeanette M. Piaget, *pro hac vice*
jpiaget@seyfarth.com
Seyfarth Shaw LLP
Two Seaport Lane, Suite 1200
Boston, MA 02210-2028
Telephone: (617) 946-4800
Telecopier: (617) 946-4801

## CERTIFICATE OF SERVICE

I, Anthony S. Califano, hereby certify that on September 2, 2026, I caused a true and accurate copy of the foregoing document to be filed through the Court's ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

*_/s/ Anthony S. Califano_*
Anthony S. Califano